ERIC MECKLEY (Bar No. 168181)
MORGAN, LEWIS & BOCKIUS LLP
One Market
Spear Street Tower
San Francisco, CA 94105-1596
Tel.: (415) 442-1000
Fax: (415) 442-1001
eric.meckley@morganlewis.com

PAUL D. CLEMENT (*pro hac vice* forthcoming)
C. HARKER RHODES IV (*pro hac vice* forthcoming)
MITCHELL K. PALLAKI (*pro hac vice* forthcoming)
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
Tel.: (202) 742-8900
paul.clement@clementmurphy.com

*Attorneys for Petitioner X Corp.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| X CORP.<br><br>*Petitioner*,<br><br>v.<br><br>LINDSAY MCGRATH; JEFFRY YONTZ,<br><br>*Respondents*. | Case No. **'25CV0748 W   MMP**<br><br>**PETITION TO COMPEL ARBITRATION**<br><br>(Federal Arbitration Act, 9 U.S.C. §4)<br><br>[Respondents' arbitration demands and Dispute Resolution Agreements and the complaints their demands incorporate by reference filed concurrently] |

Petitioner X Corp. ("X") respectfully petitions this Court pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §4, for an order compelling Respondents Lindsay McGrath and Jeffry Yontz (collectively "Respondents") to arbitrate certain claims before Judicial Arbitration and Mediation Services ("JAMS"), and to pay their respective pro rata shares of the arbitration fees as required by Section 6 of the parties' Dispute Resolution Agreement ("DRA") (attached as Exhibit 1), unless and until the individual arbitrator presiding over the arbitration orders a different apportionment. In support of its petition, X states as follows:

**PRELIMINARY STATEMENT**

1. The FAA requires courts to "rigorously … enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018). That principle controls here. When Respondents began working for X's predecessor Twitter, Inc. ("Twitter"), they entered into an arbitration agreement that explicitly provides that all arbitration fees "will be apportioned between the parties" unless the law requires otherwise. DRA §6. Respondents have each now sought arbitration under that agreement—but they each refuse to pay their individual shares of the arbitration fees, instead asserting that X must pay all but the first $400 of those fees. That position cannot be squared with the plain terms of the DRA, making Respondents each in breach of the parties' agreement. And because JAMS will not

proceed with the arbitration unless its fees are paid, their breach is preventing the arbitration to which the parties agreed from going forward.

2. X is accordingly "aggrieved by" each Respondent's "failure, neglect, [and] refusal … to arbitrate under [the parties'] written agreement for arbitration," and is entitled to "an order directing that [the] arbitration proceed in the manner provided for" in the DRA. 9 U.S.C. §4. In particular, X is entitled to an order directing Respondents each to arbitrate their claims and pay their individual shares of the arbitration fees as required by the DRA. This Court should grant the petition, compel Lindsay McGrath and Jeffry Yontz to pursue their respective claims individually in arbitration according to the terms of the DRA, and order them to pay their respective pro rata shares of the arbitration fees as required by Section 6 of the DRA unless and until the individual arbitrator presiding over the arbitration orders a different apportionment.

## JURISDICTION AND VENUE

3. This suit is brought under Section 4 of the FAA, 9 U.S.C. §4. Although Section 4 does not itself create federal jurisdiction, it empowers federal courts to compel arbitration in cases where they "would have jurisdiction … of the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. §4. The Supreme Court has accordingly instructed that to assess subject-matter jurisdiction over a petition to compel arbitration under Section 4, this Court must "look through" the Section 4 petition to the underlying controversy. *Vaden v. Discover Bank*, 556 U.S. 49, 53 (2009).

4. Applying that analysis here, this Court has federal-question jurisdiction over the underlying controversy under 28 U.S.C. §1331, because Respondents each raise underlying claims that arise under federal law.* Each Respondent has raised a claim under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §2101, *et seq.*, among others, related to their employment with Twitter. In addition, Respondent McGrath has also raised a sex discrimination claim under Title VII of the Civil Rights Act of 1964. Because this Court would have subject-matter jurisdiction over a lawsuit asserting these federal claims under 28 U.S.C. §1331, this Court likewise has jurisdiction over this Section 4 petition.

5. The Court also has diversity jurisdiction over the underlying controversy under 28 U.S.C. §1332(a). As described below, X and Respondents are citizens of different states, establishing complete diversity. And, on information and belief based on the nature of each of the Respondents' claims and their respective employment positions at Twitter, the amount in controversy in the underlying disputes with each Respondent exceeds $75,000.

6. Venue is appropriate in this district under 28 U.S.C. §1391(b) because Respondents, on information and belief, each reside in this district, and because a

---

\* The arbitration demands assert these claims by incorporating by reference the pleadings from one or both of two different lawsuits that Respondents' counsel has filed against Twitter: *Cornet v. Twitter, Inc.*, No. 22-cv-6857 (N.D. Cal.); and *Strifling v. Twitter, Inc.*, No. 22-cv-7739 (N.D. Cal.). To avoid unnecessary duplication, X has filed the referenced complaints as separate exhibits rather than including them as exhibits to the arbitration demands. A true and correct copy of the *Cornet* complaint is attached to this Petition as Exhibit 2. A true and correct copy of the *Strifling* complaint is attached to this Petition as Exhibit 3.

- 3 -
PETITION TO COMPEL ARBITRATION

Case No._____

substantial part of the events giving rise to this petition occurred in this district, including because Respondents' DRA provides that their underlying claims concerning their employment are to be settled by binding arbitration before JAMS within this district.

## PARTIES

7. Petitioner X is a corporation that is organized under the laws of the State of Nevada and has its principal place of business in Texas. The corporate headquarters of X is located at 865 FM 1209 Building 2 in Bastrop, Texas, which is located in the Western District of Texas. From the Western District of Texas, X's Owner, Chief Technology Officer, and Executive Chairman Elon Musk directs, controls, and coordinates X's activities, and the Western District of Texas is also where the majority of X's chief executive functions are performed. To the extent these executive functions are performed outside the Western District of Texas, they are mostly performed in the Southern District of New York, where X's Chief Executive Officer, Linda Yaccarino, is based. X is the successor entity to Twitter, which was renamed in July 2023 following Mr. Musk's acquisition of the company.

8. Respondent Lindsay McGrath is a former employee of Twitter, who worked at Twitter as an Administrative Business Partner III and was employed there from May 13, 2019, to November 4, 2022. On information and belief, McGrath is a citizen of the State of California. True and correct copies of McGrath's arbitration demand (minus the exhibits originally submitted with the demand, *see supra* n.*) and signed DRA are attached to this Petition as Exhibit 1-A.

1    9. Respondent Jeffry Yontz is a former employee of Twitter, who worked at Twitter as a Senior Data Scientist and was employed there from September 9, 2019, to November 18, 2022. On information and belief, Yontz is a citizen of the State of California. True and correct copies of Yontz's arbitration demand (minus the exhibits originally submitted with the demand, *see supra* n.*) and signed DRA are attached to this Petition as Exhibit 1-B.

## BACKGROUND

**A. The Parties Entered Into an Enforceable Arbitration Agreement**

10. When Respondents joined the company, Twitter sent both of them its standard dispute resolution agreement—the DRA—which governs the resolution of "any dispute arising out of or related to [Respondents'] employment with Twitter, Inc. or one of its affiliates, successor, subsidiaries or parent companies … or termination of employment, and survives after the employment relationship terminates." DRA §1. This DRA was offered to every employee who worked at Twitter.

11. As the DRA explains, Respondents each had the right to opt out of the DRA by sending an opt-out form to Twitter's human resources department. DRA §8. In fact, the DRA emphatically states in three separate locations that Twitter employees were entitled to opt out of the arbitration agreement, ensuring that employees would understand that arbitration was not a mandatory condition of their employment with Twitter. The DRA begins by stating (in bold font) that an employee "**can choose to opt out of this Agreement**" and has **"30 days to opt out."**

- 5 -
PETITION TO COMPEL ARBITRATION

Case No._____

1   DRA at 1.  The DRA then later explains (again in bold font) that "**[a]rbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.**"  DRA §8.  Finally, immediately above the employee signature line, the DRA states (again in bold font) that "**By signing below, I … confirm I am aware of my right to opt out per the terms of this Agreement**."  DRA at 3.  Various former Twitter employees followed the procedure set forth in the DRA to opt out of that agreement.

12.   Neither Respondent, by contrast, exercised their option to opt out of the DRA, and each is therefore bound by its terms.

13.   The DRA is "governed by the Federal Arbitration Act, 9 U.S.C. §1 et seq. and evidences a transaction involving commerce."  DRA §1.  "If the FAA is found not to apply," the DRA "is enforceable under the laws of the state" in which the employee is employed upon entering into the agreement.  *Id.*

14.   Under the DRA, "all covered disputes" must be resolved "only by an arbitrator through final and binding arbitration and not by way of court or jury trial."  DRA §1.

15.   The DRA provides that the parties will "bring any claim in arbitration before [JAMS], pursuant to the then-current JAMS Rules," defined to mean "the then-current JAMS Employment Arbitration Rules and Procedures."  DRA §§3, 5.  The DRA does not incorporate or refer to any of JAMS's other rules or policies, including JAMS's Policy on Employment Arbitration Minimum Standards of

1  Procedural Fairness ("Minimum Standards"). On the contrary, the DRA itself is
2  "the full and complete agreement relating to the formal resolution of covered
3  disputes." DRA §10.

4      16. The DRA also expressly allocates responsibility for paying any
5  arbitration fees. Section 6 of the DRA, entitled "Paying For The Arbitration,"
6  provides:

> Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. *If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.*

DRA §6 (emphasis added). In other words, under the plain terms of the DRA, X is required to pay all of the arbitration fees only "where required by law"; otherwise, "[i]f under applicable law [X] is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law." *Id.* The DRA also incorporates JAMS Employment Rule 31(a), *see* DRA §5 (adopting "the then-current JAMS Rules"), under which the default rule for non-mandatory agreements is that "unless the Parties have agreed to a different allocation, each Party shall pay its pro rata share of JAMS fees." JAMS Employment Rule 31(a); *cf.* Cal. Civ. Proc. Code §1284.2 (default rule that "each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator").

### B. Respondents Each Wrongfully Refuse to Pay Their Individual Shares of the Arbitration Fees.

17. After the acquisition of Twitter in October 2022, X began restructuring its workforce and operations, resulting in multiple reductions in force that affected Respondents.

18. X offered each Respondent significant severance benefits in exchange for a general release of claims. Respondents, however, both declined that offer. Instead, like over 2,200 former Twitter employees, Respondents opted to file demands for arbitration against X before JAMS.

19. As detailed above, in Respondents' arbitration demands, they raised the following claims arising under federal law: for both Respondents, a claim under the federal Worker Adjustment and Retraining Notification Act; and for Respondent McGrath, a sex discrimination claim under Title VII of the Civil Rights Act of 1964.

20. After Respondents filed their arbitration demands with JAMS, JAMS issued a non-refundable filing fee invoice, which aggregated the costs arising from Respondents' individual arbitration demands, and which became due on March 27, 2025. On March 25, 2025, X's counsel reached out to Respondents' counsel by email to confirm whether Respondents would pay their respective shares of the outstanding invoice as required by the DRA.

21. Respondents' counsel responded by email on March 25, 2025, stating that Respondents would not pay more than the first $400 of the $2,000 initiation fee for their respective arbitration demands, and that (despite the contrary terms of the

DRA) Respondents expected X to pay all of the arbitration fees beyond that initial $400 amount.

22.   Because JAMS will not move forward with its arbitration of any of Respondents' claims until the filing fee invoice is paid, their refusal to pay their full individual shares of the invoice as required by the DRA is preventing X from exercising its right to individual arbitration of Respondents' claims under the DRA.

## CLAIM FOR RELIEF

## COUNT ONE

### Order to Compel Arbitration under the DRA

### 9 U.S.C. §4

23.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

24.   By its terms, the DRA "is governed by" the FAA. DRA §1. Under the FAA, courts must "rigorously … enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted." *Epic Sys.*, 584 U.S. at 506. If an arbitration agreement is valid and covers the parties' dispute, then under Section 4 of the FAA, a court "shall" order the parties "to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. §4. That principle controls here and requires an order compelling Respondents each to arbitrate in accordance with the terms of the DRA by paying their shares of the arbitration fees.

25. In filing their arbitration demands, Respondents have each already conceded that the DRA is a valid and enforceable agreement to arbitrate and that it encompasses their individual claims. But Respondents have nevertheless each refused to comply with the DRA—and in particular, have refused to pay their full individual shares of the arbitration fees, in violation of the explicit DRA provision requiring that arbitration fees "will be apportioned between the parties." DRA §6.

26. Under Section 6 of the DRA, X "will pay the Arbitrator's and arbitration fees" in "all cases where required by law." DRA §6. In all other cases—i.e., "[i]f under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees"—those fees "will be apportioned between the parties in accordance with said applicable law." DRA §6.

27. Here, applicable law does not require X to pay all of the arbitration fees. As a result, under the plain terms of the DRA, the arbitration fees must be "apportioned between the parties." DRA §6. Respondents' individual refusals to pay their respective shares of those fees therefore violates the parties' agreement to arbitrate under the terms of the DRA.

28. Under Section 4 of the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition … for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. §4. X is "aggrieved by" Respondents' "failure … or refusal" to arbitrate in accordance with the terms of the DRA—in particular, Respondents' refusal to pay their respective shares of the arbitration fees.

*Id.* X is accordingly entitled to an order requiring Respondents each to arbitrate "in accordance with the terms of" the DRA, including its fee-sharing provision. *Id.*

**RELIEF REQUESTED**

For the foregoing reasons, X respectfully requests that this Court:

a. Enter an order compelling Lindsay McGrath and Jeffry Yontz to individually arbitrate their respective claims against X before JAMS;

b. Enter an order directing Lindsay McGrath and Jeffry Yontz to pay their respective pro rata shares of the arbitration fees as required by Section 6 of the DRA unless and until the individual arbitrator presiding over the arbitration orders a different apportionment; and

c. Grant X all other such relief as the Court may deem just and proper.

1

Respectfully submitted,

s/Eric Meckley
Eric Meckley (Bar No. 168181)
MORGAN, LEWIS & BOCKIUS LLP
One Market
Spear Street Tower
San Francisco, CA  94105-1596
Tel.: (415) 442-1000
Fax: (415) 442-1001
eric.meckley@morganlewis.com

Paul D. Clement (*pro hac vice* forthcoming)
C. Harker Rhodes IV (*pro hac vice* forthcoming)
Mitchell K. Pallaki (*pro hac vice* forthcoming)
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
Tel.: (202) 742-8900
paul.clement@clementmurphy.com
harker.rhodes@clementmurphy.com
mitchell.pallaki@clementmurphy.com

*Attorneys for Petitioner X Corp.*

March 28, 2025

2

- 12 -
PETITION TO COMPEL ARBITRATION

Case No._____