1  ERIC MECKLEY (Bar No. 168181)
2  MORGAN, LEWIS & BOCKIUS LLP
   One Market
3  Spear Street Tower
   San Francisco, CA  94105-1596
4  Tel.: (415) 442-1000
   Fax: (415) 442-1001
5  eric.meckley@morganlewis.com
6
7  PAUL D. CLEMENT (*pro hac vice*)
   C. HARKER RHODES IV (*pro hac vice*)
8  MITCHELL K. PALLAKI (*pro hac vice*)
   CLEMENT & MURPHY, PLLC
9  706 Duke Street
   Alexandria, VA 22314
10 Tel.: (202) 742-8900
   paul.clement@clementmurphy.com
11
12 *Attorneys for Petitioner X Corp.*

13               UNITED STATES DISTRICT COURT

14               SOUTHERN DISTRICT OF CALIFORNIA

15

16 X CORP.,                          Case No. 3:25-cv-00748-W-MMP
                                     [Petition Filed: March 28, 2025]
17
                      *Petitioner*,  **PETITIONER'S MEMORANDUM OF
18                                    POINTS AND AUTHORITIES IN
                                     SUPPORT OF MOTION TO
19                                   COMPEL ARBITRATION**

20         v.                        **[NO ORAL ARGUMENT PURSUANT
                                     TO LOCAL RULE]**
21
22                                   [Declaration of Adam Mehes and
                                     Exhibits thereto filed concurrently]
23
   LINDSAY MCGRATH; JEFFRY YONTZ,   Judge: Honorable Thomas J. Whelan
24                                   Courtroom: 3C
                                     Date: May 12, 2025
25
26
27                    *Respondents*.
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................1

I.    INTRODUCTION ...........................................................................................1

II.   BACKGROUND ............................................................................................4

    A.    The Parties Entered Into an Enforceable Arbitration Agreement ........4

    B.    Respondents Wrongfully Refuse to Pay Their Shares of the
        Arbitration Fees .......................................................................................6

III.  ARGUMENT ..................................................................................................7

    A.    The DRA Requires Respondents To Pay Their Shares of
        the Arbitration Fees ................................................................................8

    B.    None of Respondents' Likely Counterarguments Is Persuasive ........11

        1.    Neither JAMS Nor Its Minimum Standards Can Excuse
            Respondents From Paying Their Shares of the Arbitration
            Fees.............................................................................................12

        2.    California Law Does Not Excuse Respondents From
            Paying Their Shares of the Arbitration Fees ...............................16

        3.    California Law Cannot Penalize X For Insisting on Its
            Contractual Rights Under the DRA .............................................18

IV.   CONCLUSION.............................................................................................20

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Am. Express Co. v. Italian Colors Rest.,*
4
    570 U.S. 228 (2013)................................................................. 10

5

*Armendariz v. Found. Health Psychcare Servs., Inc.,*
6
    6 P.3d 669 (Cal. 2000) ..........................................................2, 17

7

*AT&T Mobility LLC v. Concepcion,*
8
    563 U.S. 333 (2011)................................................................. 18

9

*Belyea v. GreenSky, Inc.,*
10
    637 F.Supp.3d 745 (N.D. Cal. 2022) .................................... 20

11

*Bradford v. Rockwell Semiconductor Sys., Inc.,*
12
    238 F.3d 549 (4th Cir. 2001) ................................................9, 18

13

*Brown v. Dillard's, Inc.,*
    430 F.3d 1004 (9th Cir. 2005) ............................................... 20
14

*Burgos v. Citibank, N.A.,*
15
    745 F.Supp.3d 959 (N.D. Cal. 2024) .................................... 20

16

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
17
    207 F.3d 1126 (9th Cir. 2000) ................................................. 8

18

*Cir. City Stores, Inc. v. Ahmed,*
19
    283 F.3d 1198 (9th Cir. 2002) ............................................... 14

20

*Davis v. Movement Mortg., LLC,*
21
    2024 WL 5294290 (E.D. Cal. Dec. 10, 2024) ...................... 20

22

*EEOC v. Waffle House, Inc.,*
23
    534 U.S. 279 (2002)................................................................. 9

24

*Epic Sys. Corp. v. Lewis,*
    584 U.S. 497 (2018).............................................................1, 7
25

*Essex v. Children's Place, Inc.,*
26
    2017 WL 6000347 (D.N.J. Dec. 4, 2017) ............................ 14

27

28

*Frazier v. X Corp.*,
    739 F.Supp.3d 219 (S.D.N.Y. 2024) ................................................................. 15

*Hernandez v. Sohnen Enters., Inc.*,
    321 Cal.Rptr.3d 283 (Cal. Ct. App. 2024) .................................................. 16, 19

*Lee v. Citigroup Corp. Holdings, Inc.*,
    2023 WL 6132959 (N.D. Cal. Aug. 29, 2023) .................................................. 20

*Little v. Auto Stiegler, Inc.*,
    63 P.3d 979 (Cal. 2003) ............................................................................... 17, 18

*Ma v. Twitter, Inc.*,
    2025 WL 436636 (N.D. Cal. Feb. 7, 2025) ...................................................... 15

*Martinez v. Refinitiv, Ltd.*,
    2024 WL 5424373 (C.D. Cal. Nov. 14, 2024) .................................................. 20

*Miller v. Plex, Inc.*,
    2024 WL 348820 (N.D. Cal. Jan. 30, 2024) .................................................... 20

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016) ......................................................................... 14

*Mosley v. Wells Fargo & Co.*,
    2024 WL 4804972 (N.D. Cal. Nov. 14, 2024) .................................................. 19

*Musnick v. King Motor Co. of Fort Lauderdale*,
    325 F.3d 1255 (11th Cir. 2003) .......................................................................... 9

*Payne v. Savannah Coll. of Art & Design, Inc.*,
    81 F.4th 1187 (11th Cir. 2023) ........................................................................... 9

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) ........................................................................................ 11

*Rosa v. X Corp.*,
    2024 WL 4903619 (D.N.J. Nov. 27, 2024) ...................................................... 15

*Russell v. Siemens Indus. Software Inc.*,
    2024 WL 4545970 (N.D. Cal. Oct. 21, 2024) .................................................. 20

TABLE OF AUTHORITIES - iii

*Tillman v. Tillman,*
  825 F.3d 1069 (9th Cir. 2016) ................................................................. 11

*Viking River Cruises, Inc. v. Moriana,*
  596 U.S. 639 (2022) ................................................................. 3, 17, 20

*Young v. Refined Techs., Inc.,*
  2022 WL 3012536 (C.D. Cal. June 17, 2022) ..................................... 14

**Statutes**

9 U.S.C. §2 ................................................................................................. 9, 16

9 U.S.C. §4 ............................................................................................. 1, 7, 11

Cal. Civ. Proc. Code §1281.97 ................................................................ 3, 19

Cal. Civ. Proc. Code §1281.98 ................................................................ 3, 19

Cal. Civ. Proc. Code §1281.99 ................................................................ 3, 19

Cal. Civ. Proc. Code §1284.2 ................................................................... 6, 9

**Other Authorities**

Black's Law Dictionary (12th ed. 2024) ...................................................... 10

JAMS Employment Rule 31 ................................................................... 6, 10

JAMS Policy on Employment Arbitration Minimum Standards of
  Procedural Fairness ........................................................................ 13, 14

Oxford English Dictionary (2d ed. 1989) .................................................... 10

Webster's New International Dictionary (2d ed. 1955) ............................... 10

Williston on Contracts (4th ed. 2024) ......................................................... 15

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.  INTRODUCTION

3    The Federal Arbitration Act ("FAA") requires courts to "rigorously …

4  enforce arbitration agreements according to their terms, including terms that specify

5  *with whom* the parties choose to arbitrate their disputes and *the rules* under which

6  that arbitration will be conducted."  *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506

7  (2018).  That principle controls this case.  When Lindsay McGrath and Jeffry Yontz

8  (collectively, "Respondents") began working for Petitioner X Corp.'s ("X")

9  predecessor Twitter, Inc. ("Twitter"), they each entered into an arbitration

10  agreement, known as the Dispute Resolution Agreement ("DRA"), which explicitly

11  provides that all arbitration fees "will be apportioned between the parties" unless

12  the law requires otherwise.  DRA §6.  Respondents have now sought arbitration

13  under that agreement—but they each refuse to pay their individual shares of the

14  arbitration fees, instead asserting that X must pay the entire amount of those fees

15  after the first $400.  That position cannot be squared with the plain terms of the

16  DRA, making Respondents in breach of the parties' agreement.  And because

17  Judicial Arbitration and Mediation Services ("JAMS") will not proceed with the

18  arbitration unless its fees are paid, their breach is also preventing the parties' agreed-

19  to arbitration from going forward.  X is accordingly "aggrieved by" each

20  Respondent's "failure, neglect, [and] refusal … to arbitrate under [the parties']

21  written agreement for arbitration," and is entitled to "an order directing that [the]

22  arbitration proceed in the manner provided for" in the DRA.  9 U.S.C. §4.  In

23  particular, X is entitled to an order directing Respondents each to arbitrate their

---

MEMORANDUM OF POINTS AND AUTHORITIES - 1

1    respective claims and pay their individual shares of the arbitration fees as required

2    by the DRA.

3         None of Respondents' likely arguments for evading their obligations under

4    the DRA is persuasive.  First, Respondents cannot avoid their individual fee

5    obligations by pointing to JAMS's position that its Policy on Employment

6    Arbitration Minimum Standards of Procedural Fairness ("Minimum Standards")

7    requires X to pay all of the arbitration fees after the first $400.  The DRA does not

8    authorize JAMS (rather than the individual arbitrator overseeing the arbitration) to

9    resolve fee disputes, and does not incorporate the Minimum Standards in its fee-

10   sharing provision or anywhere else. Neither JAMS's views nor the Minimum

11   Standards can displace the express contractual provisions that reflect the bargain

12   that the parties actually struck regarding the division of fees.  In any event, even if

13   the DRA did somehow incorporate the Minimum Standards, they would not require

14   X to pay the arbitration fees for both parties here, because the DRA is an opt-out

15   agreement rather than a mandatory condition of employment.

16        Respondents also cannot escape their obligations by pointing to California

17   law.  The DRA is explicitly governed by the FAA, not California law, making

18   California's rules about who pays arbitration fees beside the point. *See Armendariz*

19   *v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669 (Cal. 2000).  Even if California

20   law were to apply, it does not require employers to cover all arbitration fees in cases

21   where (as here) arbitration is not a condition of employment.  And even if the DRA

22   were mandatory here (or if California were to require employers to pay arbitration

23   fees even under opt-out arbitration agreements), California's arbitration-specific

rule requiring employers to cover arbitration fees is a paradigm of the kind of arbitration-specific rules that are clearly preempted by the FAA. *See, e.g.*, *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650 (2022). California law accordingly provides no basis for departing from the DRA's clear command that arbitration fees "will be apportioned between the parties" unless the governing law (the FAA) requires otherwise. DRA §6.

Finally, Respondents cannot threaten X with penalties under the California Arbitration Act ("CAA") for holding them to their obligations under the DRA. The DRA is governed by the FAA, not California law, so these CAA penalties are inapplicable. And the CAA provisions that penalize employers who fail to pay arbitration fees that they owe, *see* Cal. Civ. Proc. Code §§1281.97-.99, are irrelevant here in any event because X *has* paid all the fees that it owes under the DRA; it is *Respondents* who are refusing to honor the parties' bargain and pay fees that *Respondents* owe. On top of that, these CAA provisions are arbitration-specific rules that are preempted by the FAA, and so cannot be used to punish X for insisting on its contractual rights under the DRA.

In short, X is entitled to have its arbitration agreements with Respondents enforced as written. This Court should grant the petition, compel Respondents to pursue their respective claims individually in arbitration according to the terms of the DRA, and order Respondents to pay their half of the arbitration fees unless and until their individual arbitrator orders a different allocation.

MEMORANDUM OF POINTS AND AUTHORITIES - 3

## II.    BACKGROUND

### A. The Parties Entered Into an Enforceable Arbitration Agreement

Respondents McGrath and Yontz were hired by Twitter in May and September 2019, respectively.  *See* Declaration of Adam Mehes ("Decl.") at ¶3. Respondent Yontz was hired as a data scientist, and Respondent McGrath was hired as an administrative business partner.  Decl.¶3.  When Respondents joined the company, Twitter sent each of them its standard dispute resolution agreement, *see* Decl.¶4—the DRA—which governs the resolution of "any dispute arising out of or related to [their] employment with Twitter, Inc. or one of its affiliates, successor, subsidiaries or parent companies … or termination of employment, and survives after the employment relationship terminates."  DRA §1.  This DRA was offered to every employee who worked at Twitter.  Decl.¶5.

As the DRA explains, Respondents had the right to opt out of the DRA by sending an opt-out form to Twitter's human resources department.  DRA §8.  In fact, the DRA emphatically states in three separate locations that Twitter employees could opt out of the arbitration agreement, ensuring that employees understood that arbitration was not a mandatory condition of their employment with Twitter.  The DRA begins by stating (in bold font) that an employee "**can choose to opt out of this Agreement**" and has "**30 days to opt out.**"  DRA at 1.  The DRA then later explains (again in bold font) that "**[a]rbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.**"  DRA §8.  Finally, immediately above the employee signature

---

MEMORANDUM OF POINTS AND AUTHORITIES - 4

Case No. 3:25-CV-00748-W-MMP

line, the DRA states (again in bold font) that "**By signing below, I … confirm I am aware of my right to opt out per the terms of this Agreement**." DRA at 3.

Many former Twitter employees followed the procedure set forth in the DRA to opt out of that agreement. Decl.¶7. Respondents, however, did not exercise their option to opt out of the DRA. Decl.¶8. Respondents are therefore each bound by the DRA's terms.

The DRA is "governed by the Federal Arbitration Act, 9 U.S.C. §1 et seq. and evidences a transaction involving commerce." DRA §1. "If the FAA is found not to apply," the DRA "is enforceable under the laws of the state" in which the employee is employed upon entering into the agreement. *Id.* Under the DRA, "all covered disputes" must be resolved "only by an arbitrator through final and binding arbitration and not by way of court or jury trial." DRA §1. In particular, the DRA provides that the parties will "bring any claim in arbitration before [JAMS], pursuant to the then-current JAMS Rules," defined to mean "the then-current JAMS Employment Arbitration Rules and Procedures." DRA §§3, 5. The DRA does not incorporate or refer to any of JAMS's other rules or policies, including the Minimum Standards. On the contrary, the DRA itself is "the full and complete agreement relating to the formal resolution of covered disputes." DRA §10.

The DRA also expressly allocates responsibility for paying arbitration fees. Section 6 of the DRA, entitled "Paying For The Arbitration," provides:

> Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. *If under applicable law the*

---

MEMORANDUM OF POINTS AND AUTHORITIES - 5

1
2
3
4

*Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.*

5    DRA §6 (emphasis added).  In other words, under the plain terms of DRA, X is

6    required to pay all of the arbitration fees only "where required by law"; otherwise,

7    "[i]f under applicable law [X] is not required to pay all of the Arbitrator's and/or

8    arbitration fees, such fee(s) will be apportioned between the parties in accordance

9    with said applicable law." *Id.*  The DRA also incorporates JAMS Employment Rule

10   31(a), *see* DRA §5 (adopting "the then-current JAMS Rules"), under which the

11   default rule for non-mandatory agreements is that "unless the Parties have agreed to

12   a different allocation, each Party shall pay its pro rata share of JAMS fees."  JAMS

13   Employment Rule 31(a); *cf.* Cal. Civ. Proc. Code §1284.2 (default rule that "each

14   party to the arbitration shall pay his pro rata share of the expenses and fees of the

15   neutral arbitrator").

16           **B. Respondents Wrongfully Refuse to Pay Their Shares of the**

17           **Arbitration Fees.**

18           After the acquisition of Twitter in October 2022, X began restructuring its

19   workforce and operations, resulting in multiple reductions in force that affected

20   Respondents.  Decl.¶9.  X offered them significant severance benefits in exchange

21   for a general release of claims, but they declined that offer, choosing instead (like

22   over 2,200 other former Twitter employees) to file demands for arbitration against

23   X before JAMS.  Decl.¶¶9-10; Pet.Ex.1.  In those arbitration demands, Respondents

24   raised a host of federal and state law claims related to the termination of their

employment with Twitter, including claims under the federal Worker Adjustment and Retraining Notification Act and sex discrimination claims under Title VII of the Civil Rights Act of 1964.  Pet.3 n.*; Pet.Exs.1-3.

After Respondents filed their arbitration demands with JAMS, JAMS issued a non-refundable filing fee invoice due on March 27, 2025.  Decl.Ex.4.  On March 25, 2025, X's counsel reached out to Respondents' counsel by email to confirm whether Respondents would pay their respective shares of the outstanding invoice as required by the DRA.  Decl.¶15.  Respondents' counsel responded by email on March 25, 2025, stating that Respondents would not pay more than the first $400 of the $2,000 initiation fee for their respective arbitration demands, and that (despite the contrary terms of the DRA) Respondents expected X to pay all of the arbitration fees beyond that initial $400 amount.  Decl.¶16.  Because JAMS will not move forward with its arbitration of any of Respondents' claims until its filing fee invoice is paid, their refusal to pay their full respective shares of that invoice is preventing the parties from arbitrating their claims as required by the DRA.  Decl.¶¶17-18.

## III.    ARGUMENT

Under the FAA, courts must "rigorously … enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted."  *Epic* Sys., 584 U.S. at 506.  If an arbitration agreement is valid and covers the parties' dispute, then under Section 4 of the FAA, a court "shall" order the parties "to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. §4; *accord Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126,

1130 (9th Cir. 2000). That principle controls here and requires an order compelling Respondents to arbitrate in accordance with the terms of the DRA by paying their respective shares of the arbitration fees.

### A. The DRA Requires Respondents To Pay Their Shares of the Arbitration Fees.

In filing their arbitration demands, Respondents have already conceded that the DRA is a valid and enforceable agreement to arbitrate that encompasses their claims. But Respondents have nevertheless refused to comply with the DRA—and in particular, have refused to pay their individual shares of the arbitration fees, in violation of the explicit DRA provision requiring that arbitration fees "will be apportioned between the parties." DRA §6. That breach of their obligations under the DRA warrants relief from this Court.

Section 6 of the DRA directly addresses the parties' responsibility for arbitration fees, and makes clear that the parties share responsibility for those fees here unless and until the arbitrator decides otherwise. That section, entitled "Paying For The Arbitration," sets forth two classes of cases for fee-sharing purposes: First, in "all cases where required by law," X "will pay the Arbitrator's and arbitration fees." DRA §6. Second, in all other cases—i.e., in cases where "under applicable law [X] is not required to pay all of the Arbitrator's and/or arbitration fees"—those fees "will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator." DRA §6.

This case falls squarely into the second class. By the express terms of the DRA itself, the "applicable law" here is the FAA. DRA §1 ("This Agreement is

---

MEMORANDUM OF POINTS AND AUTHORITIES - 8

governed by the [FAA] and evidences a transaction involving commerce."); *see* 9 U.S.C. §2 (FAA applies to any "contract evidencing a transaction involving commerce"); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). Nothing in the FAA requires X to pay all of the arbitration fees here, and so those fees must instead "be apportioned between the parties." DRA §6; *see, e.g.*, *Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1259 (11th Cir. 2003), *abrogated on other grounds as stated in Payne v. Savannah Coll. of Art & Design, Inc.*, 81 F.4th 1187, 1195-96 (11th Cir. 2023); *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 556 (4th Cir. 2001). Indeed, the result would be the same even if (contrary to fact) the arbitration agreement here were governed not by the FAA but by California law. *See* DRA §1 (providing that "[i]f the FAA is found not to apply," the DRA "is enforceable under the laws of the state in which" the employee is employed). Like the FAA, California law does not impose any requirement that would compel X to pay all of the arbitration fees here. *See infra* pp.16-17; *cf.* Cal. Civ. Proc. Code §1284.2 (adopting the default rule that "each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator"). And to the extent California law could be interpreted to impose any such requirement, it would be preempted by the FAA and therefore invalid. *See infra* pp.17-18, 18 n.*. In short, because "under applicable law [X] is not required to pay all of the Arbitrator's and/or arbitration fees," those fees must instead "be apportioned between the parties," and any disputes "resolved by the Arbitrator." DRA §6.

By requiring that the fees be "apportioned between the parties," the DRA sets as a default that the parties will share fees equally, at least unless and until the

individual arbitrator hearing the parties' case orders otherwise.  That understanding follows from the plain meaning of the term "apportion," which refers by default to an equal division.  *See, e.g.*, *Apportionment*, Black's Law Dictionary (12th ed. 2024) ("Division into proportionate shares; esp., the division of rights and liabilities among two or more persons or entities"); Oxford English Dictionary 579 (2d ed. 1989) ("To assign in proper portions or shares; to divide and assign proportionally; to portion out, to share"); Webster's New International Dictionary 132 (2d ed. 1955) ("To divide and assign in just proportion; to divide and distribute proportionally; to make an apportionment of; portion out; to allot").  And that understanding is reinforced by JAMS Employment Rule 31(a)—incorporated into the DRA along with the rest of the JAMS Employment Rules, *see* DRA §5—which explicitly provides that when an agreement to arbitrate is not a condition of employment, "unless the Parties have agreed to a different allocation, each Party shall pay its pro rata share of JAMS fees and expenses."  JAMS Employment Rule 31(a).

Of course, that default allocation is not set in stone for all time and in all cases. On the contrary, if a party believes that a proportional fee allocation is not "in accordance with … applicable law," DRA §6—perhaps, for instance, if a proportional allocation would impose fees "so high as to make access to the forum impracticable," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013)— the party may bring that challenge to the individual arbitrator overseeing its arbitration, and "any disputes" regarding the proper apportionment of fees "will be resolved by the Arbitrator."  DRA §6.  But unless and until the arbitrator orders otherwise, the default rule under the DRA and JAMS Employment Rule 31(a)

1    governs, and the parties share equal responsibility for paying any arbitration fees.

2        Respondents' refusal to abide by the DRA and pay their shares of the

3    arbitration fees entitles X to relief under Section 4 of the FAA, which "provides a

4    federal remedy" for the breach of an arbitration agreement.  *Prima Paint Corp. v.*

5    *Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).  Under Section 4, "[a] party

6    aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a

7    written agreement for arbitration may petition … for an order directing that such

8    arbitration proceed in the manner provided for in such agreement."  9 U.S.C. §4.

9    Here, X is "aggrieved by" Respondents' "failure … or refusal" to arbitrate in

10   accordance with the terms of the DRA, *id.*—in particular, by their refusal to honor

11   their obligations to pay their shares of the arbitration fees, which is preventing the

12   arbitration from going forward.  *See Tillman v. Tillman*, 825 F.3d 1069, 1075 (9th

13   Cir. 2016) (noting that "refus[ing] to arbitrate by choosing not to pay for arbitration"

14   would constitute "a party's 'failure, neglect, or refusal' to arbitrate" under Section

15   4).  This Court should therefore grant X an order under Section 4 of the FAA

16   requiring Respondents to arbitrate "in the manner provided for" by the DRA, by

17   paying their individual shares of the arbitration fees.  9 U.S.C. §4.

18       **B.    None of Respondents' Likely Counterarguments Is Persuasive.**

19        Respondents have no sound basis for their efforts to evade their contractual

20   obligations under the DRA, and none of the objections that they could raise is

21   persuasive.

---

MEMORANDUM OF POINTS AND AUTHORITIES - 11

Case No. 3:25-CV-00748-W-MMP

1

**1.   Neither JAMS Nor Its Minimum Standards Can Excuse Respondents From Paying Their Shares of the Arbitration Fees.**

First, JAMS's invocation of its Minimum Standards and reluctance to apportion costs is a reason to compel arbitration according to the parties' agreement, not a justification for Respondents to refuse to honor their end of the bargain. JAMS has no authority to require X to pay fees that it does not owe under the DRA, which does not incorporate the Minimum Standards and which authorizes only the individual arbitrator presiding over the case (not JAMS itself) to resolve any fee disputes. And even if the DRA did somehow incorporate the Minimum Standards, those standards do not require X to pay all of the arbitration fees beyond the first $400 here in any event, because the DRA is an opt-out agreement rather than a mandatory condition of employment.

In early June 2023, after numerous former Twitter employees filed arbitration demands, X sent a letter to JAMS explaining that the arbitration fees in any such proceedings should be apportioned between the parties under the DRA unless applicable law requires otherwise. *See* Decl.Ex.1. JAMS responded on June 21, 2023, in a letter written by its General Counsel Sheri Eisner. Decl.Ex.2 ("Eisner Letter"). In that response, JAMS declared that "notwithstanding any contrary provision in the parties' arbitration agreement," it had decided to apply its own Minimum Standards to any arbitration demands by former Twitter employees, even though those standards "reflect JAMS administrative policy" rather than applicable law, are "separate and apart from the protections that may apply in any given jurisdiction" under applicable law, and "might go further than the law requires in a

particular jurisdiction." Eisner Letter at 1. As a result, JAMS stated, it would "continue to issue invoices in these matters consistent with [Minimum] Standard No.6"—that is, it would bill all arbitration fees in the arbitrations beyond the first $400 to X, rather than apportioning them between the parties. Eisner Letter at 1; *see* Minimum Standards ¶B & No. 6 (where "an arbitration is based on a clause or agreement that is required as a condition of employment," the "only fee that an employee may be required to pay" is the initial case management fee, and "[a]ll other costs must be borne by the company"). JAMS did not explain why its Minimum Standards, which apply only where the arbitration agreement "is required as a condition of employment," would apply to the DRA even though the DRA explicitly permitted employees to opt out. Eisner Letter at 1. Instead, it stated that "any further issue about whether the Minimum Standards apply in a given case should be directed to the arbitrator in the case," while asserting that it would be up to JAMS itself to "make a final determination." *Id.*

JAMS's decision to invoice X for all arbitration fees in these matters cannot allow Respondents to evade their contractual obligations under the DRA. As an initial matter, the DRA does not give JAMS any authority to determine how arbitration fees should be divided between the parties. On the contrary, the DRA explicitly provides that "any disputes" regarding the proper apportionment of fees "will be resolved by the Arbitrator"—meaning the individual arbitrator appointed to hear the particular claimant's arbitration, not JAMS. DRA §6; *see* DRA §3 (describing selection of "the Arbitrator"). Under the plain terms of the DRA, whatever JAMS may think about how the arbitration fees should be paid is simply

1    irrelevant to the parties' contractual obligations.

2    Nor do the Minimum Standards themselves affect the parties' obligations

3    under the DRA.  The DRA incorporates the terms of the JAMS Employment Rules,

4    but it does not incorporate the Minimum Standards.  *See* DRA §5 (arbitration will

5    be conducted "pursuant to the then-current JAMS Rules"); *see also id.* §3 (defining

6    "JAMS Rules" as "the then-current JAMS Employment Arbitration Rules and

7    Procedures," not the Minimum Standards).  That is hardly surprising, given that the

8    Minimum Standards apply only where "an arbitration is based on a clause or

9    agreement that is required as a condition of employment," Minimum Standards ¶B,

10   which the DRA is not.  *See supra* pp.4-5 (describing the DRA's explicit opt-out

11   right); *see also, e.g.*, *Young v. Refined Techs., Inc.*, 2022 WL 3012536, at *5 (C.D.

12   Cal. June 17, 2022) ("opt-out provision" is "[o]ne of the typical indicia that a

13   contract is not a condition of employment"); *Essex v. Children's Place, Inc.*, 2017

14   WL 6000347, at *5 (D.N.J. Dec. 4, 2017) (agreement that "expressly state[s]" that

15   it "is not a mandatory condition of employment," and "has a clear 'opt out'

16   provision," is not a condition of employment); *see also Mohamed v. Uber Techs.,*

17   *Inc.,* 848 F.3d 1201, 1211 (9th Cir. 2016) ("[A]n arbitration agreement is not

18   adhesive if there is an opportunity to opt out of it."); *Cir. City Stores, Inc. v. Ahmed*,

19   283 F.3d 1198, 1199-200 (9th Cir. 2002) (similar).  And on top of all that, under the

20   DRA, whether X must pay all of the fees for a given arbitration turns on whether X

21   is required to pay those fees "under applicable law," not under the Minimum

22   Standards or any other rules set by the arbitration organization.  DRA §6.  The

23   Minimum Standards accordingly do not affect Respondents' obligation to pay their

MEMORANDUM OF POINTS AND AUTHORITIES - 14

Case No. 3:25-CV-00748-W-MMP

shares of the arbitration fees under the DRA.

Indeed, reading the DRA to require that X pay all the arbitration fees under the Minimum Standards would make its express fee-sharing provision superfluous, contrary to basic principles of contract law. *See, e.g.*, 11 Williston on Contracts §32:5 (4th ed. 2024) ("An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous[.]"). Interpreting the DRA to envision that the Minimum Standards apply and require X to pay all the arbitration fees here, and in practically all other cases (despite the plain terms of the DRA and the Minimum Standards themselves), would deprive the DRA's explicit fee-sharing provisions of any meaningful effect. That is not a plausible reading of the contract.

X acknowledges that another district court in the Ninth Circuit reached a contrary conclusion in *Ma v. Twitter, Inc.*, 2025 WL 436636 (N.D. Cal. Feb. 7, 2025), and held that JAMS's decision to invoice X for all arbitration fees controls. But *Ma* ultimately denied the petitioners' motion to compel arbitration on other grounds, making its discussion of the fee-sharing issue *dicta*. *See id.* at *13. In any event, as *Ma* recognized, there is a division of authority among the district courts that have considered this precise issue. *See id.* at *5 ("Two district courts have addressed the same DRA at issue in this case and have reached different conclusions."). *Compare Frazier v. X Corp.*, 739 F.Supp.3d 219 (S.D.N.Y. 2024), *with Rosa v. X Corp.*, 2024 WL 4903619 (D.N.J. Nov. 27, 2024). X Corp. respectfully submits that *Ma* (and *Frazier*) chose the wrong side of that division, and that the plain terms of the DRA make clear that neither JAMS nor the Minimum Standards can authorize

MEMORANDUM OF POINTS AND AUTHORITIES - 15

Case No. 3:25-CV-00748-W-MMP

1    Respondents to disregard their contractual obligation to pay their individual shares

2    of the arbitration fees.

3    **2.    California Law Does Not Excuse Respondents From Paying**

4    **Their Shares of the Arbitration Fees.**

5    Respondents also cannot evade their contractual obligations to pay their

6    individual shares of the arbitration fees by relying on California law.  The DRA is

7    governed by the FAA, not by California law; and even if California law were to

8    apply, its arbitration-specific rule requiring employers to pay all arbitration fees in

9    cases involving mandatory arbitration agreements is inapplicable here and would be

10    preempted by the FAA in any event.

11    To begin with, the DRA makes explicit that it "is governed by" the FAA, not

12    California law, and that California law is relevant only "[i]f the FAA is found not to

13    apply."   DRA §1.   Because the FAA plainly *does* apply to the DRA (which

14    indisputably "evidences a transaction involving commerce," DRA §1; *see* 9 U.S.C.

15    §2), California law has no role to play here.  *See Hernandez v. Sohnen Enters., Inc.*,

16    321 Cal.Rptr.3d 283, 297-98 (Cal. Ct. App. 2024) ("[I]f parties agree to apply the

17    FAA's procedural provisions, rather than the procedures of the CAA, then the state

18    arbitration procedures do not apply[.]").  And because the FAA does not require X

19    to pay all of the arbitration fees, those fees must "be apportioned between the parties

20    in accordance with [the FAA]," regardless of what California law might otherwise

21    require.  DRA §6.

22    But even if California law were the "applicable law" here, it would not require

23    X to pay all of the arbitration fees in this matter.  The California Supreme Court has

held that in certain employment-related arbitration proceedings that arise from "mandatory" arbitration agreements—i.e., agreements "which an employer imposes on a prospective or current employee as a condition of employment"—the employer must pay all arbitration fees. *Armendariz*, 6 P.3d at 674. But as already described, the DRA was optional, not mandatory, and explicitly informed employees (three times, and in bold font each time) that they were entitled to opt out of that agreement. *See supra* pp.4-5. The employer-pays rule that the California Supreme Court adopted for mandatory agreements in *Armendariz* accordingly does not apply here even on its own terms.

In any event, the *Armendariz* rule is preempted by the FAA. By its terms, the employer-pays rule adopted in *Armendariz* applies only to arbitration agreements; indeed, the California Supreme Court has expressly recognized that the "*Armendariz* cost-shifting requirement is unique to arbitration" because "arbitration, alone among contract provisions," carries an obligation for the parties to cover the costs of the arbitration forum. *Little v. Auto Stiegler, Inc.*, 63 P.3d 979, 989 (Cal. 2003). But as the U.S. Supreme Court has made clear, the FAA preempts any "legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Viking River Cruises*, 596 U.S. at 650. That perfectly describes the *Armendariz* rule, which applies only in the arbitration context and imposes an arbitration-only requirement that employers must pay all arbitration fees even when the parties have agreed otherwise. And while the California Supreme Court has tried to describe *Armendariz* as merely an application of "general state law contract principles," *Little*, 63 P.3d at 989, that characterization

1   is belied by the very nature of the *Armendariz* rule, which is arbitration-specific by

2   its very terms.  In any event, even "generally applicable contract defenses" cannot

3   "stand as an obstacle to the accomplishment of the FAA's objectives," which

4   includes "ensur[ing] that private arbitration agreements are enforced according to

5   their terms."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343-44 (2011).

6   Respondents accordingly cannot rely on *Armendariz* as a basis for evading their

7   obligations under the DRA to pay their individual shares of the arbitration fees.[*]

8   **3.   California Law Cannot Penalize X For Insisting on Its**

9   **Contractual Rights Under the DRA.**

10  Finally, Respondents cannot seek to penalize X under California law for

11  insisting that Respondents pay their individual shares of the arbitration fees.  As

12  already explained, the DRA is governed by the FAA, not California law.  Regardless,

13  any effort to rely on California Code of Civil Procedure §§1281.97-.99 would be

14  unavailing.  Those California statutes provide that in any employment arbitration

15  where "state or federal law or the rules of the arbitration provider" require the

16  employer to pay arbitration fees to initiate or continue the arbitration, an employer

17  who fails to pay those fees within 30 days after they are due "is in material breach

---

[*] *Armendariz*'s categorical rule that employers must shoulder all arbitration fees also diverges from the individualized, case-by-case approach courts have used under the FAA to determine whether arbitration fees pose a prohibitive cost for particular parties.  *See, e.g.*, *Bradford*, 238 F.3d at 556 (adopting a "case-by-case analysis" of whether arbitration fees deprive the claimant of "an adequate and accessible substitute to litigation"); *cf. Little*, 63 P.3d at 992-93 (acknowledging that the California Supreme Court "considered and rejected in *Armendariz* a case-by-case approach to arbitration costs").  That divergence represents yet another conflict between *Armendariz* and federal arbitration law.

MEMORANDUM OF POINTS AND AUTHORITIES - 18

Case No. 3:25-CV-00748-W-MMP

of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration" under the CAA. Cal. Civ. Proc. Code §§1281.97(a), 1281.98(a). At that point, those statutes permit the employee to (among other options) "[w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction." *Id.* §§1281.97(b)(1), 1281.98(b)(1). If the employee takes that option, the court "shall impose sanctions" on the employer, *id.* §§1281.97(d), 1281.98(c)(2), by "ordering the [employer] to pay the reasonable expenses, including attorney's fees and costs, incurred by the employee … as a result," *id.* §1281.99(a). "In addition," the court "may order" sanctions including "prohibiting the [employer] from conducting discovery in the civil action," "rendering a judgment by default against the [employer]," or "treating the [employer] as in contempt of court," unless the court finds that the employer "acted with substantial justification or that other circumstances make the imposition of the sanction unjust." *Id.* §1281.99(b).

None of those provisions is applicable here. To begin with, because the DRA "is governed by the [FAA]," DRA §1, "the procedures of the CAA, including section 1281.97, do not apply." *Hernandez*, 321 Cal.Rptr.3d at 299; *Mosley v. Wells Fargo & Co.*, 2024 WL 4804972, at *4 (N.D. Cal. Nov. 14, 2024). And even if the CAA's procedural provisions did govern the DRA, the plain language of the agreement makes clear that arbitration fees "will be apportioned between the parties" where (as here) applicable law does not require X to pay them in full. DRA §6. Given that express apportionment provision, neither "state or federal law [n]or the rules of the arbitration provider" requires X to pay all of the arbitration fees, making §§1281.97-99 inapplicable. Cal. Civ. Proc. Code §§1281.97(a), 1281.98(a).

---

MEMORANDUM OF POINTS AND AUTHORITIES - 19

Case No. 3:25-CV-00748-W-MMP

Those California statutes are also preempted by the FAA.  The FAA establishes an "equal-treatment principle" that preempts "any state rule discriminating on its face against arbitration." *Viking River Cruises*, 596 U.S. at 650. By "mak[ing] arbitration provisions unenforceable on arbitration-specific grounds," §§1281.97-.99 run afoul of that equal-treatment principle and are therefore preempted.  *Belyea v. GreenSky, Inc.*, 637 F.Supp.3d 745, 756 (N.D. Cal. 2022); *see also, e.g.*, *Davis v. Movement Mortg., LLC*, 2024 WL 5294290, at *2 (E.D. Cal. Dec. 10, 2024); *Martinez v. Refinitiv, Ltd.*, 2024 WL 5424373, at *4 (C.D. Cal. Nov. 14, 2024); *Russell v. Siemens Indus. Software Inc.*, 2024 WL 4545970, at *9 (N.D. Cal. Oct. 21, 2024); *Burgos v. Citibank, N.A.*, 745 F.Supp.3d 959, 965-66 (N.D. Cal. 2024); *Miller v. Plex, Inc.*, 2024 WL 348820, at *5 (N.D. Cal. Jan. 30, 2024); *Lee v. Citigroup Corp. Holdings, Inc.*, 2023 WL 6132959, at *2 (N.D. Cal. Aug. 29, 2023). In particular, these provisions substantively and impermissibly rework background principles of contract law regarding waiver and material breach in a manner unique to arbitration.  *E.g.*, *Burgos*, 745 F.Supp.3d at 965.  Waiver and breach are traditionally questions that turn on the specific facts surrounding the alleged violation of a contract—not bright-line rules, like the 30-day cut off dictated by Cal. Civ. Proc. Code §§1281.97(a)(1), .98(a)(1).  *See Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005).  The California statutes' "clear departure from ordinary principles of waiver and breach when applied to arbitration proceedings" is accordingly preempted.  *Burgos*, 745 F.Supp.3d at 965.

## IV.  CONCLUSION

For the foregoing reasons, this Court should enter an order under Section 4 of

---

1    the FAA compelling Respondents to arbitrate their respective claims against X and

2    to pay their individual shares of the arbitration fees as required by the DRA.

3                                              Respectfully submitted,

                                               s/Paul D. Clement
                                               PAUL D. CLEMENT (*pro hac vice*)
                                               C. HARKER RHODES IV (*pro hac vice*)
                                               MITCHELL K. PALLAKI (*pro hac vice*)
                                               CLEMENT & MURPHY, PLLC
                                               706 Duke Street
                                               Alexandria, VA 22314
                                               Tel.: (202) 742-8900
                                               paul.clement@clementmurphy.com
                                               harker.rhodes@clementmurphy.com
                                               mitchell.pallaki@clementmurphy.com

                                               ERIC MECKLEY (Bar No. 168181)
                                               MORGAN, LEWIS & BOCKIUS
                                               LLP
                                               One Market
                                               Spear Street Tower
                                               San Francisco, CA  94105-1596
                                               Tel.: (415) 442-1000
                                               Fax: (415) 442-1001
                                               eric.meckley@morganlewis.com

                                               *Attorneys for Petitioner X Corp.*

     April 7, 2025

4

---

MEMORANDUM OF POINTS AND AUTHORITIES - 21

Case No. 3:25-CV-00748-W-MMP