SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801

*Attorney for Respondents*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| X CORP.<br><br>Petitioner,<br><br>v.<br><br>LINDSAY MCGRATH, *et al.*,<br><br>Respondents. | Case No. 3:25-cv-00748-W-MMP<br><br>**RESPONDENTS' REPLY IN SUPPORT OF THEIR MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11, 28 U.S.C. § 1927, AND THE INHERENT POWER OF THE COURT**<br><br>JUDGE: Hon. Thomas J. Whelan<br>COURTROOM: 3C |

## I. INTRODUCTION

In its opposition, Twitter once again tries to gloss over the fact that it is here before this Court on its Petition and Motion to Compel Arbitration, despite the fact that *Respondents* have *already* filed arbitration proceedings in which it is *Twitter* who has refused to proceed with arbitration (after being ordered to pay arbitration fees). Twitter continues to press the ultimate merits of what it (now) views as the proper interpretation of the parties' arbitration agreement and how fees should be apportioned, urging these arguments are not frivolous and thus not sanctionable. But the issue is not whether or not Twitter should have been ordered to pay arbitration fees. The issue is whether it was proper or frivolous for Twitter to try to press this issue by seeking to compel *Respondents* to arbitration, when it is Twitter that is the one avoiding arbitration (and the ruling it received in arbitration).

Twitter's conduct in improperly bringing proceedings to compel arbitration before this Court while simultaneously refusing to arbitrate in the parties' agreed-upon forum (and under the rules and rulings of that forum) is manifestly sanctionable. Twitter's efforts to do an end-run around the arbitral process by stymying arbitration while shopping around for a judicial forum willing to entertain what is essentially an impermissible interlocutory appeal of a procedural arbitration ruling violates Rule 11 and 28 U.S.C. § 1927 and is also sanctionable pursuant to the Court's inherent powers.

At the same time, even Twitter's newfangled merits arguments — which again, must be pursued in arbitration and not on an interlocutory basis before this Court — are nothing more than gamesmanship, devised to further delay

Respondents' cases from being heard in arbitration and to throw up as many barriers to these arbitrations as Twitter and its counsel can dream up. Indeed, Twitter should be bound by the representations it has already made in court, including last year when it argued to the court in *Ma*: "**Twitter has never objected to paying the arbitral fees as required by JAMS and AAA for California, Nevada, and Oregon because <u>Twitter is obligated to make those payments under the DRA</u>.**" *Ma v. Twitter, Inc.*, No. 23-CV-03301-JST (N.D. Cal., Feb. 9, 2024), dkt. 35 at 18 n.8 (Twitter's Opposition to Petitioners' Motion to Compel Arbitration) (emphasis added). Yet now, faced with the reality of being held accountable in scores of individual arbitrations — and having to pay the arbitration fees for those proceedings (and unhappy with the results it is getting so far in these arbitrations)[1] — Twitter has done a complete 180 and presses directly contradictory arguments in an effort to use this judicial forum as a means for further stalling and obstructing Respondents' ability to have their claims heard in the agreed-upon forum. Such conduct is sanctionable.

## II.   ARGUMENT

Throughout its opposition, Twitter repeatedly protests that the arguments it has made in its Petition and Motion to Compel Arbitration "come nowhere near warranting sanctions" and are "not remotely frivolous," because "reasonable minds—and reasonable jurists—can disagree as to the correct" interpretation of the

---

[1]   *See, e.g.*, *Maheu v. Twitter, Inc.*, 2025 WL 1730227, at *1 (S.D.N.Y. June 20, 2025) (noting arbitrator in proceedings brought by former employee similarly situated to Respondents entered award in claimant's favor against Twitter).

parties' arbitration agreement in the context of the fees apportioned to Twitter by JAMS. Pet'r's Opp. at 1, 11. But this argument skips over the crucial fact that Twitter has chosen to mire the parties in litigation before this Court, rather than pursuing its arguments through the proper, agreed-upon arbitral channels as it is bound to do by its arbitration agreement and as Respondents have repeatedly attempted to do.[2]

In Twitter's arbitration agreement, the parties expressly delegated to arbitration all disputes relating to Respondents' employment, the employment relationship, conditions of employment, the interpretation or application of the arbitration agreement, and arbitration fees. Dkt. 1-2 (arbitration agreement) §§ 1, 6. The agreement "requires all covered disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial." *Id.* § 1. Clearly, the parties agreed to delegate all the issues Twitter frivolously tries to goad this Court into now deciding, despite the fact that the FAA:

> "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been

---

[2]  While Twitter repeatedly protests that "[o]ther former Twitter employees represented by Respondents' counsel have likewise filed petitions to compel arbitration against [Twitter] in several other jurisdictions," Pet'r's Opp. at 7, those employees have done so *because Twitter has refused to proceed in arbitration.* Here, Twitter has likewise refused to proceed in arbitration and thus cannot be the aggrieved party. It is not for the federal courts to decide here whether the arbitration providers are correct or not correct in their interpretation of their own rules and the parties' arbitration agreement (with respect to payment of fees). Twitter has improperly filed this petition to seek an interlocutory review of those rulings.

signed." *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218 (1985). The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms.[3]

Thus, by initiating this court action to compel arbitration — when Respondents have filed arbitration demands and attempted to pursue arbitration — as an end-run around rulings in arbitration, Twitter has engaged in sanctionable conduct. When faced with a similar dispute, the Ninth Circuit recently explained:

> It strains credulity to believe that it is the business of a federal court to second-guess an independent arbitration provider's application of its own rule—a rule incorporated into the parties' agreement….Our "limited" role under the FAA no doubt encompasses adjudicating gateway questions of arbitrability. These questions usually concern the validity and scope of the agreement to arbitrate. Our need to address such gateway questions, however, stems in the first place

---

[3]   *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted); *accord Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 68–69 (2019) (citations and quotations omitted) ("We have held that a court may not rule on the potential merits of the underlying claim that is assigned by contract to an arbitrator, even if it appears to the court to be frivolous. A court has no business weighing the merits of the grievance because the agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. That…principle applies with equal force to [ ] threshold issue[s]…. Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator."). Where an arbitration agreement delegates an issue, "the sole question for [a court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). Otherwise, "[i]f parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Id.* at 568–69 (quoting *Hall St. Associates, L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 588 (2008)).

from the parties' disagreement about whether to arbitrate at all. The question of validity arises when one party characterizes the arbitration agreement as invalid; the question of scope arises when one party denies that the arbitration agreement covers the controversy at issue….By contrast, nobody here is denying that Starz's Terms contain a valid arbitration agreement or that the agreement covers the dispute at issue. Jones may be dissatisfied with JAMS's interpretation of its own rules, but the JAMS Rules are what she agreed to and she can seek recourse within those Rules. We cannot be made to do the bidding of every unhappy arbitration claimant, and especially not one who is already in arbitration. Jones's invocation of the courts' responsibility under the FAA rings hollow where the circumstances simply present no dispute about arbitrability.[4]

---

[4]   *Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1184–85 (9th Cir. 2025) (citations omitted); *accord Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 653 (9th Cir. 1991) (quoting *Thompson v. Zavin,* 607 F.Supp. 780, 783 (C.D.Cal.1984)) (emphasis in original) (alterations omitted) ("Once it is determined that the parties are obligated to submit the subject matter of a dispute to arbitration '*procedural*' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator. Reservation of '*procedural*' issues for the courts would thus not only create the difficult task of separating related issues, but would also produce frequent duplication of effort."); *Prudential Real Est. Affiliates, Inc. v. Prudential MGM Realty, Inc.*, 959 F.2d 241 (9th Cir. 1992) ("The AAA's application of its own rules is significant, particularly because the parties had agreed that the AAA would administer the arbitration according to AAA's commercial arbitration rules."); *Vital Pharms. Inc. v. PepsiCo Inc.*, 2022 WL 2176528, at *3 (D. Ariz. June 16, 2022) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002)) ("The Court has no warrant to disturb the AAA's interpretation of its own rules."); *Hagan v. Park Miller LLC*, 2020 WL 7319357, at *4 (N.D. Cal. Dec. 11, 2020), *order clarified,* 2021 WL 1688347 (N.D. Cal. Apr. 29, 2021) ("Even if Park Miller is right that the AAA erred in this decision, Park Miller breached its arbitration agreement by refusing to abide by the AAA's decision. Neither the parties' agreement nor any other authority cited by Park Miller empowers the Court to second-guess the AAA's decision or otherwise short-circuit the arbitration process. Park Miller must submit to arbitration and abide by the AAA's determinations regarding which AAA rules to apply."); *see also, e.g.*, *Appel Corp. v. Katz*, 217 F. App'x 3, 4 (2d Cir. 2007) (quoting *Koch Oil, S.A. v. Transocean Gulf Oil Co.,* 751 F.2d 551, 554 (2d Cir.1985) ("[I]n light of the AAA rule vesting it with the authority to interpret and apply its own rules, parties

At the same time, as both the Ninth Circuit and courts across the country have explained, litigants engage in sanctionable conduct under both Rule 11 and § 1927 when their defiance of arbitration decisions leads to unnecessary court proceedings. The Ninth Circuit has written:

> [A]n unjustified refusal to abide by an arbitrator's award may equate an act taken in bad faith, vexatiously or for oppressive reasons. It is clear that bad faith supporting an award of attorneys' fees may be found in conduct that led to the lawsuit or in conduct occurring during the course of the action. Moreover, "[b]ad faith may be demonstrated by showing that a defendant's obstinancy in granting a plaintiff his clear legal rights necessitated resort to legal action with all the expense and delay entailed in litigation." *Huecker v. Milburn,* 538 F.2d 1241, 1245 n. 9 (6th Cir.1976). The award of attorneys' fees in the latter context satisfies a dual purpose—deterrence and compensation. The threat of an award of attorneys' fees tends to deter frivolous dilatory tactics. The award also compensates a plaintiff "for the added expense of having to vindicate clearly established rights in court." *Id*….These considerations are particularly apt in the context of labor arbitration….Engaging in frivolous dilatory tactics not only denies the individual prompt redress, it threatens the goal of industrial peace….
> "[W]e refuse to countenance frivolous and wasteful judicial challenges to conscientious and fair arbitration decisions." …

---

are obligated to comply with the AAA's determinations so long as they are 'within reasonable limits.'"); *Idea Nuova, Inc. v. GM Licensing Grp., Inc.*, 2010 WL 10041842, at *3–5 (S.D.N.Y. Oct. 18, 2010) ("The…prohibition on interlocutory review of interim rulings by arbitrators similarly applies to threshold determinations by the AAA. Even if one assumes there is a distinction between an interlocutory decision of the AAA and an interim ruling of an arbitrator, it is a technical distinction without a difference. Both are similarly intermediary steps in deciding all claims submitted to arbitration."); *Diemaco, a Div. of Devtek Corp. v. Colt's Mfg. Co.*, 11 F. Supp. 2d 228, 231–32 (D. Conn. 1998) (holding, on petition to compel arbitration, that court was bound by AAA's decision as to its interpretation of parties' agreement and its own rules and procedures, and court could not allow interlocutory review of its decision).

> The federal labor policy favoring voluntary arbitration dictates that when a refusal to abide by an arbitration decision is without justification, and judicial enforcement is necessary, the court should award the party seeking enforcement reasonable costs and attorneys' fees incurred in that effort. This sanction is necessary lest federal labor policy be frustrated by judicial condonation of dilatory tactics that lead to wasteful and unnecessary litigation….
>
> Th[e Employer's] refusal [to abide by an arbitration ruling] gave rise to the necessity to petition the district court for enforcement of that right with the attendant delay and expense.[5]

Other courts in this Circuit have likewise explained:

> [T]he Ninth Circuit acknowledged its earlier holding that attorney's fees are warranted "where a party, without justification, refuses to abide by an arbitrator's award" and reasoned that "the policy concerns raised by frivolous or bad faith refusals to arbitrate ... are the same as those raised by frivolous or bad faith refusals to comply with an arbitration award." Accordingly, **attorney's fees are equally warranted in response to an unjustified refusal to arbitrate as they are for an unjustified refusal to abide by an arbitration award**.[6]

---

[5] *Intl. Union of Petroleum and Indus. Workers v. W. Indus. Maint., Inc.*, 707 F.2d 425, 428–29 (9th Cir. 1983) (quoting *Int'l Ass'n of Machinists & Aerospace Workers Dist. 776 v. Texas Steel Co.*, 639 F.2d 279, 283–284 (5th Cir.1981)) (citations omitted); *accord Rosendin Elec., Inc. v. United P. Ins. Co.*, 42 F.3d 1401 (9th Cir. 1994) (unpublished) (upholding sanction "pursuant to 28 U.S.C. § 1927 for attempting to appeal [an] arbitration award" because litigant "was unhappy with the arbitrator's…decisions and pursued its challenges despite the parties' intent that everything be settled by binding arbitration"); *Georgia-P. Corp. v. Graphic Commun. Union, Dist. Council No. 2, Loc. No. 388M, AFL-CIO*, 1999 WL 300652, at *5 (N.D. Cal. May 3, 1999) ("Given the extreme deference given to a binding, bargained-for arbitration, it appears that the Employer's challenge to this award was wholly unjustified. In view of the federal policy favoring binding arbitration of labor disputes, the Court concludes that sanctions are appropriate in this case.").

[6] *Intl. Bhd. of Elec. Workers, Loc. 1547, AFL-CIO v. Alaska Commun. Sys. Holdings, Inc.*, 2020 WL 1272611, at *3 (D.Ak. Feb. 3, 2020) (footnotes omitted)

Thus, Twitter's refusal to abide by the arbitration decision apportioning fees and its bringing of this present action to further delay and frustrate Respondents' ability to pursue their claims in the parties' agreed-upon arbitral forum is sanctionable.

Here, it is all the more evident that Twitter's conduct in this case is nothing more than gamesmanship. Twitter has previously represented to courts that "Twitter has never objected to paying the arbitral fees as required by JAMS and AAA for California, Nevada, and Oregon because **Twitter is obligated to make those payments under the DRA**." *Ma*, No. 23-CV-03301-JST (N.D. Cal., Feb. 9, 2024), dkt. 35 at 18 n.8 (Twitter's Opposition to Petitioners' Motion to Compel Arbitration) (emphasis added). Twitter now doggedly argues before this Court that the "DRA" requires the opposite conclusion. But Twitter is barred from making these contrary arguments under the doctrine of judicial estoppel and pursuant to counsel's obligations under Rule 11.[7] And in any event, this radical course reversal

---

(emphasis added) (citing *United Food & Com. Workers Union, Locals 197, 373, 428, 588, 775, 839, 870, 1119, 1179 and 1532, by United Food & Com. Workers Intern. Union, AFL-CIO v. Alpha Beta Co.*, 736 F.2d 1371 (9th Cir. 1984)).

[7] *See, e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (quotations and citations omitted) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding….[A]bsent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory….[C]ourts have uniformly recognized that its purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment….[and] intended to prevent the perversion of the judicial process….[by] prevent[ing] parties from playing fast and loose with the courts."); *HD Brous & Co. v. Mrzyglocki*, 2004 WL 376555, at *14 (S.D.N.Y. Feb. 26, 2004) ("[C]ounsel exhibit a pattern of shifting their position at their convenience. Without providing the Court with explanation for these shifts, the

is telling; it evidences that Twitter's motives are not in enforcing the terms of its agreement, but rather directed at delaying and frustrating Respondents' efforts to arbitrate their disputes.

### III. CONCLUSION

For the foregoing reasons, Respondents respectfully request that this Court grant their motion for sanctions.

Respectfully submitted,

LINDSAY MCGRATH, *et al.*, Respondents,
By their attorney,

/s/ *Shannon Liss-Riordan*
Shannon Liss-Riordan, SBN 310719
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com

Dated:       July 17, 2025

---

contradictions give rise to an inference that at least one half of each mutually exclusive pairing is a potential violation of Rule 11(b)(2). Furthermore, counsel's maintenance of these contradictions of convenience in papers submitted to the Court may, of itself, be sanctionable under Rule 11.").